528 A.2d 474

The HECHT COMPANY and the Public Service
Commission of Maryland

v.

The CHESAPEAKE AND POTOMAC TELEPHONE
COMPANY OF MARYLAND.

No. 147, Sept. Term, 1984.

Court of Appeals of Maryland.

July 28, 1987.

William S. Reyner, Jr. (Steven A. Levy, John C. Keeney, Jr. and Hogan & Hartson on the brief), Washington, D.C., for appellant, The Hecht Co.

Kirk J. Emge, General Counsel (Sandra Hall-Eckroade, Asst. General Counsel, on the brief), Baltimore, Md., for appellant, The Public Service Com'n of Maryland.

D. Michael Stroud, Baltimore, Md. (J. William Sarver, Baltimore, Md.; Alfred Winchell Whittaker, Joyce L. Bernstein and Kirkland & Ellis, Washington, D.C. and Albert D. Brault, Janet S. Zigler and Brault, Graham, Scott & Brault, Rockville, Md., on the brief), for appellee.

Argued before MURPHY, C.J., SMITH *, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ.

COLE, Judge.

This case involves a billing dispute between the Chesapeake and Potomac Telephone Company of Maryland (C & P) and one of its customers, The Hecht Company (Hecht). The question presented is whether C & P's interstate tariff rate filed with the Federal Communications Commission

---

\* Smith, J., and Couch, J., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

(FCC)[1] or C & P's intrastate tariff rate filed with the Public Service Commission of Maryland (PSC)[2] should apply to Hecht's use of private telephone lines[3] that carry both interstate and intrastate communications.

The facts giving rise to this dispute are as follows. Sometime before May 1978, Hecht began leasing private telephone lines from C & P that ran from Hecht's headquarters in Silver Spring, Maryland, to its stores in Annapolis, Baltimore, Columbia, Lakeforest, Laurel, and Savage, Maryland. These lines were wholly intrastate. Hecht, however, used equipment located in its Silver Spring offices to switch calls from these *intrastate* lines to physically connected *interstate* private lines running to Hecht's stores in the District of Columbia and Virginia.[4] A traffic study of calls made over Hecht's private intrastate lines in Maryland showed that 45% of the calls originated or terminated in the District of Columbia or Virginia. Therefore, all of Hecht's private lines physically located in Maryland were used for both interstate and intrastate communication.

Until May 1980, C & P charged Hecht for the use of the intrastate private lines under C & P's intrastate tariff rates. At the end of that month, however, C & P began charging Hecht under C & P's higher interstate tariff rate.[5] Hecht reacted to this rate change by filing a complaint with the

---

1. For the period relevant to this appeal, C & P concurred in AT & T Tariff F.C.C. No. 260. By concurring, C & P essentially adopted the tariff as its own with respect to interstate services within its operating territory. *See* 47 C.F.R. § 61.131–.136 (1986).

2. C & P's intrastate private line tariff is set forth in PSC Tariff No. 204.

3. Private telephone lines differ from public telephone lines in that the charge for private line service is a fixed monthly charge for each line regardless of use.

4. The tariff rates applicable to the interstate private lines connecting Hecht's Silver Spring offices to its stores in the District of Columbia and Virginia are not in dispute.

5. C & P also "back-billed" Hecht for the difference between the higher interstate rates and the rates actually charged for the two prior years.

PSC in September 1980. In its complaint, Hecht argued that certain sections of Maryland's Public Service Commission Law, Maryland Code (1957, 1980 Repl.Vol.), Art. 78, § 1–107, required C & P to bill Hecht under its intrastate tariff filed with the PSC. In response to Hecht's complaint, C & P argued that the FCC's broad jurisdictional powers over interstate communications required C & P to apply its interstate tariff rates. On June 15, 1982, the PSC issued an order granting Hecht's request for relief and ordering C & P to charge Hecht according to C & P's intrastate tariff. On July 14, 1982, C & P appealed the PSC's decision to the Circuit Court for Montgomery County.

On August 20, 1982, C & P [6] filed a Petition for Declaratory Ruling with the FCC. The petition asked the FCC to rule that it has asserted federal rate regulation jurisdiction over the lines in question and that C & P's interstate tariff rates should therefore be applied to Hecht's private lines.

Almost two years passed without the circuit court or the FCC making a decision. Although tempted to wait until the FCC ruled, the circuit court finally rendered a decision on June 20, 1984. The circuit court reversed the PSC's order and held that Hecht's private lines were used for interstate communication and were thus subject to C & P's interstate tariff rates on file with the FCC. Hecht and the PSC appealed the circuit court's decision to the Court of Special Appeals. Prior to consideration by the intermediate appellate court, we issued a writ of certiorari on our own motion and heard oral argument in the case on April 2, 1985.

Four and one-half months after the parties presented oral argument to us, the FCC issued a Memorandum Opinion and Order granting C & P's request for a declaratory ruling. The opinion stated:

> The presence of different rates for the same service in a state tariff and in an interstate tariff on file with this Commission creates the potential for unlawful rate dis-

---

6. C & P was joined in its petition by the American Telephone and Telegraph Company.

crimination among customers, which we cannot allow. Accordingly, C & P's interstate tariff rate takes precedence and must be applied in this and all similar situations, even though the facilities in question are physically intrastate, because these facilities are used for interstate service and because of the impracticality of separately charging for the interstate portion of use.

Thus, the FCC ordered C & P to apply its interstate tariff rates to Hecht's private lines.

Hecht and the PSC promptly filed with the FCC Petitions for Reconsideration. With the consent of the parties, we refrained from rendering a decision in the instant case until the FCC ruled on the Petitions for Reconsideration. Almost two years later, on June 12, 1987, the FCC issued an opinion on the Petitions for Reconsideration and concluded that its prior opinion "properly found that the Communications Act preempts the [PSC's] attempt to require C & P to charge intrastate tariff rates for Hecht's interstate private line service." Accordingly, the FCC denied Hecht's and the PSC's Petitions for Reconsideration.

With the FCC's decision final and in hand, we are now ready to decide the case before us. The dispute between C & P and Hecht originally involved the question of whether the interstate usage of the private lines *automatically* divested the PSC of authority to regulate the rates charged for the use of those lines. That, however, is no longer the question before us. Instead, the question is whether the FCC's express assertion of rate regulation over the lines preempts regulation by the PSC.

It is well settled that under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state regulations are preempted by federal law when " 'compliance with both federal and state regulations is a physical impossibility.' " *Hillsborough County, Fla. v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting *Florida Lime & Avocado Growers, Inc., v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963)). It is also well settled that federal regulations

have the same preemptive effect as federal statutes and that "[w]here Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily." *Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 153–54, 102 S.Ct. 3014, 3022–23, 73 L.Ed.2d 664 (1982).

The Communications Act of 1934 invests the FCC with broad power to regulate interstate communications. 47 U.S.C. §§ 151, 152(a) (1982). In addition, the Act makes it unlawful for any common carrier to make unjust or unreasonable discrimination in charges for interstate communication service and requires each common carrier to file with the FCC, and follow, a schedule for all charges it makes for interstate communication service. *Id.* §§ 202(a), 203(a), (c). In light of the substantial amount of interstate calls carried over the private lines at issue, and the FCC's broad power to regulate the rates of interstate communications, the parties do not dispute the FCC's power to claim jurisdiction over these lines. In their briefs and at oral arguments, both the PSC and Hecht conceded that an express assertion of jurisdiction by the FCC would preempt any conflicting state regulation and would divest the PSC of any rate regulation authority over the lines. The FCC's declaratory ruling on this issue requires C & P to apply its interstate tariff rate and constitutes an express assertion of rate regulation authority by the FCC. We agree with the parties that the FCC has statutory authority to regulate the lines in question. Thus, because compliance with both the FCC and PSC would be impossible, we hold, in accordance with the Supremacy Clause, that C & P is bound to follow the FCC's pronouncement.[7]

---

7. Approximately one year after the parties presented oral argument to us, Hecht called our attention to the Supreme Court's May 27, 1986, decision in *Louisiana Pub. Serv. Comm'n v. F.C.C.,* 106 S.Ct. 1890 (1986). In that case, the Supreme Court held that the FCC has no jurisdiction to prescribe practices for depreciating telephone plant and equipment for intrastate ratemaking purposes. In the case at bar, all

JUDGMENT OF THE CIRCUIT COURT FOR MONT-
GOMERY COUNTY AFFIRMED. APPELLANT TO PAY
THE COSTS.

parties agree that the lines in question are used for interstate commu-
nications and the FCC is empowered to claim jurisdiction over the
lines. Thus, the Louisiana case is unhelpful in answering the question
in this case.