**Kathryn K. RICHARDSON,
Plaintiff–Appellant,**

v.

**KRUCHKO & FRIES, a Professional Partnership, Defendant–Appellee.**

**No. 91–2251.**

United States Court of Appeals,
Fourth Circuit.

Argued April 10, 1992.

Decided May 28, 1992.

---

William Joseph Rodgers, Collier, Shannon & Scott, Washington, D.C., argued (Robert J. Cunningham, Jr., Whitestone, Brent, Young & Merrill, Fairfax, Va., on brief), for plaintiff-appellant.

Carol Thomas Stone, Jordan, Coyne, Savits & Lopata, Fairfax, Va., argued (Sheila A. Cleary, on brief), for defendant-appellee.

Before WILKINSON and LUTTIG, Circuit Judges, and KIDD, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.

## OPINION

WILKINSON, Circuit Judge:

Appellant Kathryn Richardson claims that she was discharged by her employer in retaliation for pro-union activities. In addi-

tion to filing a charge with the National Labor Relations Board alleging that her employer had committed an unfair labor practice, she brought state-law claims for intentional interference with business relations and intentional infliction of emotional distress against the law firm that advised her employer in labor and employment matters. We agree with the district court that these claims are preempted by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.*, and therefore affirm its judgment dismissing the complaint.

## I.

As this appeal is from a dismissal under Rule 12(b) of the Federal Rules of Civil Procedure, we set forth the facts as stated in the complaint. Kathryn Richardson was a registered nurse at Fairfax Hospital for about 15 years. During the later years, she became an active member of the American Hospital Association, which had been seeking collective bargaining rights at the hospital. In early March of 1990, Richardson presented objections to hospital management about antiunion literature that management had posted on the premises. Shortly thereafter, on March 8, the hospital terminated her.

Richardson and her union responded by filing charges with the National Labor Relations Board (NLRB), alleging that her termination constituted an unfair labor practice in violation of § 8(a)(1) and (3) of the NLRA, 29 U.S.C. § 158(a)(1) and (3). In addition, Richardson filed this action in state court against appellee Kruchko & Fries, the law firm that was the hospital's counsel in labor and employment matters. The complaint asserted claims for two state-law torts, intentional interference with business relations and intentional infliction of emotional distress. Richardson alleged that the law firm knowingly advised its client to violate the NLRA. She contended that Kruchko had advised the hospital to terminate her in retaliation for her prounion activities and in an effort to deter others from engaging in such activity, and that her termination was a direct and proximate result of this advice. Rich-

ardson sought $500,000 in compensatory damages and $500,000 in punitive damages.

Kruchko removed this action to the federal district court for the Eastern District of Virginia based on diversity of citizenship. Kruchko then moved to dismiss the complaint for failure to state a claim upon which relief can be granted, *see* Fed. R.Civ.P. 12(b)(6), and for want of subject-matter jurisdiction, *see id.* 12(b)(1). After a hearing, the district court held that Richardson's claims were preempted by the NLRA and that the court therefore lacked subject-matter jurisdiction to entertain them. Accordingly, the court dismissed her complaint.

Richardson filed a timely notice of appeal.

## II.

The principles of labor preemption, which derive from *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), are well established. In the NLRA, Congress established a "comprehensive amalgam of substantive law and regulatory arrangements ... to govern labor-management relations affecting interstate commerce." *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 675–76, 103 S.Ct. 1453, 1458, 75 L.Ed.2d 368 (1983). A critical element of that amalgam is the NLRB's primary jurisdiction in interpreting and enforcing federal labor law. *See Garmon*, 359 U.S. at 242–45, 79 S.Ct. at 778–79. Labor preemption serves to ensure that state law does not frustrate either the substantive policies established by the NLRA or the regulatory mechanisms through which those policies are implemented. "[T]he broad powers conferred by Congress upon the National Labor Relations Board to interpret and to enforce" the federal labor laws "necessarily imply that potentially conflicting 'rules of law, of remedy, and of administration' cannot be permitted to operate." *Vaca v. Sipes*, 386 U.S. 171, 178–79, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967) (quoting *Garmon*, 359 U.S. at 242, 79 S.Ct. at 778). " '[C]entralized administration of specially designed procedures [is] necessary to ob-

tain uniform application of [the NLRA's] substantive rules and to avoid [the] diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies.'" *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 192, 98 S.Ct. 1745, 1755, 56 L.Ed.2d 209 (1978) (quoting *Garner v. Teamsters Local Union No. 776*, 346 U.S. 485, 490, 74 S.Ct. 161, 165, 98 L.Ed. 228 (1953)). State law affords an almost limitless variety of claims that could be asserted against the activities of both labor and management, and through the years both sides have invoked the principles of *Garmon* preemption to avoid the specter of inconsistent legal obligations, procedures, and remedies.

■] The general contours of the labor preemption doctrine are clear and have been settled since *Garmon:* The basic rule is that, if the conduct that the state seeks to regulate is "actually or arguably" protected under NLRA § 7 or prohibited by NLRA § 8, then "otherwise applicable state law and procedures are ordinarily pre-empted." *Jones*, 460 U.S. at 676, 103 S.Ct. at 1459. *

### III.

We now turn to the application of these principles to Richardson's claims.

### A.

Richardson first seeks to avoid application of *Garmon* doctrine altogether. She notes that the NLRA applies only to unions, employers, and agents of the latter,

*see* 29 U.S.C. § 152(2) (defining "employer" to include an employer's agent). She points out that her state-law claims are asserted against neither an employer nor a union but instead a third party, her employer's legal counsel, and she argues that the district court erred in concluding that Kruchko functioned as the hospital's agent in rendering the advice at issue. Thus, concludes Richardson, the NLRA is inapplicable to Kruchko's conduct and application of *Garmon* preemption is accordingly improper. Kruchko responds that it was, in fact, an agent of its client and that the NLRA—and *Garmon* preemption—therefore applies.

■] We need not decide whether Kruchko functioned as the hospital's agent in rendering the advice at issue, because the state-law claims are subject to *Garmon* preemption even when the defendant is neither a union, an employer, nor the employer's agent. Whether state-law claims are preempted under *Garmon* is determined not by the identity of the party against whom the claims are asserted, but rather by the *issues* that those claims require a court to adjudicate. The dangers that *Garmon* doctrine seeks to avert—"the potential conflict of two law enforcing authorities, with the disharmonies inherent in two systems, ...of inconsistent standards of substantive law and differing remedial schemes," *Garmon*, 359 U.S. at 242, 79 S.Ct. at 778—are present whenever courts are required to review conduct that is arguably prohibited or protected by the NLRA, no matter what the identity of the party against whom the state-law claims are as-

---

* There are *two exceptions to this broad preemption principle.* First, state law is not preempted to the extent that "the conduct at issue is only a peripheral concern of the [NLRA]." *Jones*, 460 U.S. at 676, 103 S.Ct. at 1459. Second, preemption is inapplicable when "the conduct at issue ... touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act." *Id.* Before this court, Richardson has not argued that either exception applies.

  In addition, § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), gives both federal and state courts subject-matter jur-

isdiction over suits alleging a breach of the collective bargaining agreement between an employer and a labor organization. If conduct that constitutes an unfair labor practice also violates the collective bargaining agreement, then federal and state courts and the NLRB exercise concurrent jurisdiction. *See Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962); *Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc.*, 845 F.2d 1250, 1252 (4th Cir.1988). In this case, Richardson has made no § 301(a) claim, presumably because there was no collective bargaining agreement between the hospital and her union.

serted. Thus, we agree with the Ninth Circuit that the identity of the party defendant is not determinative; a state-law claim is preempted "if the conduct relied on to prove a crucial element in the state action is conduct that is arguably covered by the NLRA." *Lumber Prod. Indus. Workers Local #1054 v. West Coast Indus. Relations Ass'n,* 775 F.2d 1042, 1049 (9th Cir. 1985) (citing *Jones,* 460 U.S. at 682, 103 S.Ct. at 1462); *see also Satterfield v. Western Elec. Co.,* 758 F.2d 1252 (8th Cir.1985) (holding that a state tort claim that the owner of a construction project convinced the plaintiff's employer, a contractor, to fire him for conduct protected by NLRA § 7 is preempted).

Our conclusion is not disturbed by Richardson's argument that such a rule of preemption would leave injured parties without a remedy when the tortfeasor is not subject to the NLRA. To begin with, the Supreme Court has made clear that state-law claims may be preempted even when a plaintiff is without a remedy under the NLRA. *See Guss v. Utah Labor Relations Bd.,* 353 U.S. 1, 77 S.Ct. 598, 609, 1 L.Ed.2d 601 (1957) (holding that state-law claims are preempted even when the NLRB refuses to assume jurisdiction). Moreover, preemption of Richardson's state-law claims would not leave her without a remedy for her discharge: she would retain those remedies, available through her administrative action against her employer, that are provided her by the NLRA. That state law might provide remedies unavailable under the NLRA has never been a basis for avoiding *Garmon* preemption. *See Garmon,* 359 U.S. at 246–47, 79 S.Ct. at 780; *Jones,* 460 U.S. at 684, 103 S.Ct. at 1463.

■ While Richardson argues that the district court applied *Garmon* preemption too broadly, we think, to the contrary, that her argument would create a gaping hole in *Garmon* doctrine. Attorneys, labor consultants, and other such third parties advise and represent both employers and unions with regard to matters governed by federal labor law. Indeed, it is the rare employer who undertakes labor or employ-ment related action without consulting legal counsel beforehand. In this case, however, Richardson seeks to avoid the broad reach of *Garmon* by attacking the attorneys who advised her employer prospectively with regard to the very conduct that is currently the subject of an unfair labor practice proceeding before the NLRB. Permitting circumvention of *Garmon* preemption through artful pleading of claims against attorneys would allow parties involved in labor disputes a direct avenue to court, a result that would undermine the NLRB's primary jurisdiction in labor law and raise a substantial risk of conflict between federal and state law. Further, third parties such as attorneys do typically act as agents of the employer, *see, e.g., Virginia Elec. & Power Co. v. Bowers,* 181 Va. 542, 25 S.E.2d 361, 363 (1943), and are thus in such cases clearly subject to the NLRA. *See* 29 U.S.C. § 152(2). Allowing suits such as Richardson's against labor or management attorneys would only serve to disrupt the attorney-client relationship and to increase the fees that law firms charge to represent unions or employers in labor matters. We have seen no indication that Congress intended such consequences, and we shall not ourselves enact them.

### B.

Turning to the merits of the preemption question, Richardson next argues that her claims are not preempted by the NLRA because there is no actual or potential conflict between her state-law causes of action and federal labor policy. She contends that her claims seek merely to hold Kruchko to standards of conduct imposed by state law and that, in resolving these claims, no examination of the legality of the hospital's actions under the NLRA is required.

We disagree with Richardson's characterization of her state-law claims. In order to recover on each of her two claims, Richardson would be required to prove that her termination by the hospital constituted an unfair labor practice under NLRA § 8(a). Her first claim is tortious interference with business relations. Under Virginia law, Richardson would be required to prove not

only that Kruchko "induc[ed] or caus[ed] a breach or termination" of her contractual relationship with the hospital, *Chaves v. Johnson,* 230 Va. 112, 335 S.E.2d 97, 102 (1985), but also—since Richardson was an at-will employee—that Kruchko employed "improper methods" in doing so, *Duggin v. Adams,* 234 Va. 221, 360 S.E.2d 832, 836 (1987). The law firm's advice to its client could have been improper, however, only if it counseled a violation of the NLRA—and, indeed, that is the only impropriety alleged in the complaint. At trial, therefore, Richardson would have been required to prove that her termination by the hospital did, in fact, constitute an unfair labor practice under the NLRA.

Richardson's second claim likewise requires her to prove a violation of the NLRA. To establish intentional infliction of emotional distress, Richardson would be required to prove that Kruchko's "conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Womack v. Eldridge,* 215 Va. 338, 210 S.E.2d 145, 148 (1974). As the district court noted, the only allegation in the complaint that would support a conclusion that Kruchko's provision of legal advice was outrageous is that it advised the hospital to commit an unfair labor practice in violation of NLRA § 8(a).

Thus, Richardson's claims are in essence artfully pleaded unfair labor practice charges. They fall at the heart of the NLRB's exclusive jurisdiction—determinations as to whether an employer's conduct constitutes an unfair labor practice under NLRA § 8 and whether an employee's actions are protected under NLRA § 7. Adjudication of the claims would require a court to pass on the legality under the NLRA of precisely the same conduct that is presently before the NLRB, and would risk frustration of national labor policy through inconsistent state-law judgments— precisely the evils that *Garmon* preemption seeks to avoid. "In cases where, as here, the substance of the dispute is the same under both state and federal law, the state law must yield to the jurisdiction of the NLRB." *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1518 (11th Cir.1988).

"[W]hen the same controversy may be presented to the state court or the NLRB, it must be presented to the Board." *Sears, Roebuck,* 436 U.S. at 202, 98 S.Ct. at 1760.

That the instant claims sound in tort, whereas the administrative action before the NLRB involves allegations of statutory violations of NLRA § 8(a), is beside the point. The Supreme Court has emphasized that mere labels are not relevant in the labor preemption context; rather, labor preemption is " 'concern[ed] ... with delimiting *areas of conduct* which must be free from state regulation if national policy is to be left unhampered.' " *Local 100, United Ass'n of Journeymen v. Borden,* 373 U.S. 690, 698, 83 S.Ct. 1423, 1428, 10 L.Ed.2d 638 (1963) (quoting *Garmon,* 359 U.S. at 246, 79 S.Ct. at 780); *see also, e.g., Jones,* 460 U.S. at 675–84, 103 S.Ct. at 1458–63 (holding a tortious interference with contract claim preempted); *Carter v. Sheet Metal Workers' Int'l Ass'n,* 724 F.2d 1472 (11th Cir.1984) (holding an intentional infliction of emotional distress claim preempted); *In re Sewell,* 690 F.2d 403 (4th Cir.1982) (holding a tortious interference with contract claim preempted). Thus, Richardson may not avoid *Garmon* preemption by re-labelling unfair labor practice charges as state-law torts or by suing a third party allegedly not subject to the NLRA. Neither tactic is availing, and the judgment of the district court dismissing the complaint must therefore be

AFFIRMED.