818 A.2d 1136

**Christina Renee LAW, et al.,**

**v.**

**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL NO. 37, AFL–CIO.**

**No. 83, Sept. Term, 2002.**

Court of Appeals of Maryland.

March 14, 2003.

Marvin Ellin (David Ellin, on brief), Baltimore, for appellants.

Andrew Janquitto (Mudd, Harrison & Burch, on brief), Towson, for appellee.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

Appellants are former employees of Omni House Health Behavioral Services, Incorporated (hereafter "Omni House"), which operates a health care facility in Anne Arundel County.

During the spring of 2001, authorized agents of the International Union of Operating Engineers, Local No. 37, AFL–CIO, appellees (hereafter "the union"), undertook an organizing campaign to create a bargaining unit consisting of certain employees at Omni House. In the course of the organizing campaign, appellants engaged in picketing and related collective action as instructed by the union in an effort to get Omni House to recognize the union as their collective bargaining representative. In response to the picketing, Omni House suspended and then terminated the employment of appellants because they had not given Omni House ten-days notice of their intentions to picket. 29 U.S.C. § 158(g), appears to require a ten-day notice prior to picketing of a health care institution by a union.[1] On July 25, 2001, appellants filed suit against the union in the Circuit Court for Baltimore City for negligent misrepresentation under State law because the union had assured appellants that their activities were lawful and not subject to adverse action by their employer.

On August 21, 2001, the union filed a "notice of removal" of the case to the United States District Court for the District of Maryland. On December 18, 2001, the union then filed a Motion to Dismiss the federal case for lack of subject matter jurisdiction, claiming that the issue presented was preempted by federal law mandating that cases such as the case *sub judice* initially be presented to the National Labor Relations Board (hereafter "NLRB").

On January 3, 2002, the federal district court neither granted nor denied the union's Motion to Dismiss and remanded the case to the Circuit Court for Baltimore City for it to decide whether the National Labor Relations Act (hereafter "NLRA") preempts appellants' claims and places exclusive subject matter jurisdiction for their claims with the NLRB.

On May 29, 2002, Judge Kaye A. Allison of the Circuit Court issued an Order granting the union's Motion to Dismiss

---

[1] Unless otherwise noted, all statutory references hereafter are to the *National Labor Relations Act of 1935,* codified in Title 29 of the United States Code.

and stated that the court must defer to the NLRB because it has jurisdiction over the matter. On June 5, 2002, appellants filed a Notice of Appeal to the Court of Special Appeals. On November 8, 2002, we, on our own initiative, granted a writ of certiorari to undertake review of this issue before the intermediate appellate court acted. *Law, et. al. v. Operating Engineers Local No. 37*, 371 Md. 613, 810 A.2d 961 (2002). Appellants presented one question for review in their brief:

"Was the Circuit Court in error for dismissing the Appellants' Case ruling that a State tort fell under the jurisdiction of the National Labor Relations Board and was thus preempted?"

We answer no to appellants' question and affirm the decision of the Circuit Court. We hold that appellants' claims are preempted by the NLRA because any State court decision to adjudicate the tort suit for negligent misrepresentation would, under the circumstances in the case at bar, result in adjudication of underlying labor issues relating to unfair labor practices falling within the NLRB's primary jurisdiction.

## I. FACTS

Appellants sued the union after being terminated by their employer, Omni House. In the spring of 2001, the union solicited appellants to unionize by explaining the benefits of unionization and collective bargaining. In late May of 2001, the union's representatives met with appellants to discuss the possibility of having the union act as their collective bargaining representative. At least seven of the eight appellants signed union cards, as well as two other employees who are not parties to this suit, authorizing the union to act as their exclusive bargaining representative.

On June 12, 2001, at a meeting between appellants and the union, the union explained to appellants that they should not be concerned about being fired for their union membership as they were "within their legal rights." Then, upon the advice of the union representatives, appellants notified the CEO of Omni House that they had organized and were members of a

union and requested that Omni House recognize the union as their bargaining agent. The union alleges that, at this time, appellants had not yet become members of the union, even though they might have thought the opposite when appellants told Omni House they had joined a union.[2]

On June 14, 2001, the union notified Omni House that appellants were assisting in its organizing efforts. This letter advised Omni House that appellants, the bargaining unit, were covered by section 7 of the NLRA.[3] On June 15, 2001, the union advised Omni House that a majority of the employees in the bargaining unit had designated the union as their exclusive bargaining representative. The letter also requested recognition by Omni House of the union as the exclusive bargaining representative of the employees at the Third Avenue Omni House location in Anne Arundel County.

On June 19, 2001, appellants engaged in a recognitional strike and picketed Omni House in an attempt to have it recognize the union as appellants' exclusive bargaining representative and because the CEO of Omni House refused to speak with and/or meet with the union organizers.

Subsequent to the picketing, the union advised appellants that the CEO had refused to accept the union's letter of

---

**2.** We note this difference in the parties' recitation of the facts because whether the employee appellants had yet become members of a union would be a decision for the NLRB to determine, if it were adjudicating the underlying unfair labor practice claims this case ultimately rests upon. The record reflects, generally, that appellants were not yet members of the union. In interrogatory answers while the case was before the federal court, appellants affirmed that they had not joined the union and Judge Davis for the federal district court stated in his remand opinion that "none of the plaintiffs ever became a member of the union." This and other factual disputes support our holding that the relationship between the three actors of this case (the employer, the employee and the union) is not clear and that each parties' protected rights and prohibited activities under the NLRA are in dispute. Such determinations, generally, come under the exclusive primary jurisdiction of the NLRB.

**3.** Section 7 of the NLRA detailed *infra*, generally guarantees the rights of employees to self organize, form, join or assist a labor organization with the goal of collective bargaining.

representation and that appellants should return to work the following day.

When appellants returned to work the next day, June 20th, they were, individually, called into the executive office of Omni House and advised that they were suspended because of their strike activities. Appellants, on June 21, 2001, again went out on the street and began picketing. Representatives of the union were present and approved the resumption of the picketing.

At approximately noon on June 21st, appellants were notified by the union's attorney that the picketing and striking activities were improper because, under the law, they were required to have given ten-days notice prior to picketing because of Omni House's status as a health care institution.[4] As a result, the union advised appellants to write a letter informing the CEO that all of appellants were going to return to work the next day, Friday, June 22, 2001.

On June 22, 2001, the union advised appellants that the decision to strike was an error on their part and apologized for their suspension. Also on this day, the CEO of Omni House issued a letter to appellants notifying each of them that their employment at Omni House was being terminated for failure to give the required ten-days notice of picketing activity as required by the NLRA.

Appellants then filed a tort suit for negligent misrepresentation against the union in the Circuit Court. The union sought removal of the case to the federal district court and later filed

---

4. At this time, the record reflects that the union's attorney did, in fact, tell appellants they themselves had to have given ten-days notice prior to picketing and by appellants not having done so the picketing was unlawful. The union's attorney also stated that it was the union's mistake for not having informed appellants of this requirement. However, the union now proffers that appellants had not become union members and that section 8(g), upon which Omni House relies, is only applicable to "labor organizations" by the very language of the statute; therefore, appellants did not have to adhere to the ten-day notice provision and did not commit unlawful activity. Therefore, what really occurred was, according to the union's present position, an unfair labor practice pursuant to section 8 of the NLRA on the part of Omni House.

a Motion to Dismiss the case in the federal court. On January 3, 2002, the District Court Judge Andre M. Davis, *sua sponte,* neither granted nor denied the union's Motion to Dismiss and instead remanded the case back to the Circuit Court for Baltimore County for lack of federal court jurisdiction, holding that it was for that State court to decide whether the NLRA preempts appellants' claim and places subject matter jurisdiction over the claim with the NLRB.

On remand to the Circuit Court, the Circuit Court Judge granted the union's Motion to Dismiss, stating:

"This case comes before this court on a Motion to Dismiss, filed by the [union]. The [union] argues that this court lacks subject matter jurisdiction because resolution of [appellants'] negligent misrepresentation claim involves issues that implicate §§ 7 and 8 of the [NLRA], codified at 29 USC §§ 157, 158. 'When an activity is arguably subject to §§ 7 and §§ 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB].' *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245 [79 S.Ct. 773, 3 L.Ed.2d 775] (1959). This court agrees.

"This court finds that an adjudication of [appellants'] claims would require this court to interpret and apply the notice requirement, as set forth in § 8(g) of the [NLRA], as well as other portions of the [NLRA], as raised by the [union]. As this case involves activities which are subject to §§ 7 or §§ 8 of the [NLRA], this court must defer to the [NLRB]. *Garmon,* 359 U.S. at 245[, 79 S.Ct. 773]. Therefore, it is this 29th day of May, 2002, in the Circuit Court for Baltimore City *ORDERED,* that the [union's] Motion to Dismiss is hereby *GRANTED.*" [Alterations added.]

## A. THE SUPREMACY CLAUSE

The Supremacy Clause of the United States Constitution, art. VI, cl. 2,[5] requires that when compliance with both

---

**5.** Article VI, clause 2 of the United States Constitution provides:

federal and state law is a physical impossibility, the "state law is 'void to the extent it conflicts with a federal statute.' " *Sanders v. State,* 57 Md.App. 156, 167, 469 A.2d 476, 482, *cert. denied,* 299 Md. 656, 474 A.2d 1345 (1984) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 747, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576, 596 (1981)). *See also Hillsborough County, Florida v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985); *Harrison v. Schwartz,* 319 Md. 360, 364, 572 A.2d 528, 530, *cert. denied,* 498 U.S. 851, 111 S.Ct. 143, 112 L.Ed.2d 110 (1990); *Hecht Co. v. C & P Telephone Co.,* 310 Md. 148, 152, 528 A.2d 474, 475–76 (1987). If Congress has expressly stated preemptive intent or evidenced an intent to occupy a field, federal law shall govern. *Harrison,* 319 Md. at 364, 572 A.2d at 530. When, however, Congress does not expressly state its intent, there is a presumption against preemption. *Abbot by Abbot v. American Cyanamid Co.,* 844 F.2d 1108, 1112 (4th Cir.1988) (citing *Maryland v. Louisiana,* 451 U.S. at 726, 101 S.Ct. at 2118, 68 L.Ed.2d at 576). The presumption is even stronger against preemption of state remedies, like tort remedies, when no federal remedy exists. *Abbot,* 844 F.2d at 1112 (citing *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 251, 104 S.Ct. 615, 622–23, 78 L.Ed.2d 443, 454 (1984)); *see also Taylor v. General Motors Corp.,* 875 F.2d 816 (11th Cir.1989), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990) (strong presumption against preemption when subject matter is tort remedy).

In the case *sub judice,* as we discuss more fully *infra,* a federal remedy does exist for appellants—a claim in respect to Omni House might possibly be brought before the NLRB for adjudication. More important, it appears that in order to fully adjudicate claims against the union it will be necessary to

---

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary Notwithstanding."

determine whether the reaction of Omni House to the strike and picketing, *i.e.*, the termination of appellants, was an unfair labor practice under section 8 of the NLRA. Additionally, as we later indicate, an alleged inadequacy of an NLRB remedy, as compared to the remedies potentially available for a negligent misrepresentation claim in a state court suit, does not under the circumstances here present, overcome the applicability of what is known as the *Garmon*[6] preemption that prevails, generally, in certain labor disputes. Federal preemption principles at this stage of the proceedings, deprive the Maryland courts of jurisdiction over the instant matter.

## B. NLRA AND PREEMPTION

The NLRA established the NLRB to adjudicate labor disputes between and among employees, unions and employers.[7] Since the 1950s, the Supreme Court has stressed the primary role to be played by the NLRB in labor dispute resolution. In *Garner v. Teamsters, Local Union No. 776*, 346 U.S. 485, 490, 74 S.Ct. 161, 165–66, 98 L.Ed. 228, 239 (1953), the Supreme Court noted that the NLRB had been vested with its powers because:

> "Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decisions, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid those diversities and conflicts likely

---

**6.** *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

**7.** *See* NLRA, § 10 (codified at 29 U.S.C. § 160).

to result from a variety of local procedures and attitudes toward labor controversies."

██ In *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 246, 79 S.Ct. 773, 780, 3 L.Ed.2d 775, 784 (1959), the case correctly relied upon by the Circuit Court Judge in the case *sub judice,* the Supreme Court further explained:

"The governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy."

The Supreme Court then enunciated the general rule (the *Garmon* preemption) that state regulation is preempted:

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield."

*Id.* at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782. Even when it is not clear that the activity is protected or prohibited, as is reflected by the factual disputes in the case *sub judice,* the determination of the status of the activity is to be made by the NLRB, the agency declared by Congress to have special competence over such issues.[8] The Supreme Court opined: "[w]hen an activity is *arguably* subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be adverted." *Id.* at 245, 79 S.Ct. at 780, 3 L.Ed.2d at 783 (emphasis added).[9]

---

8. *See Batson v. Shiflett,* 325 Md. 684, 710, 602 A.2d 1191, 1204 (1992).

9. Federal law is instructive on this issue. The Fourth Circuit explained in *Richardson v. Kruchko & Fries,* 966 F.2d 153, 155–56 (4th Cir.1992):

"The principles of labor preemption, which derive from … *Garmon* … are well established. In the NLRA, Congress established a 'comprehensive amalgam of substantive law and regulatory arrangements … to govern labor-management relations affecting interstate commerce.' A critical element of that amalgam is the NLRB's

■ The *Garmon* rule, at its most basic level, provides that state and federal courts must yield exclusive jurisdiction to the NLRB whenever the conduct sought to be rectified by actions in state courts is in an area subject to NLRB jurisdiction and is either protected or "arguably" protected by section 7 of the NLRA, or is prohibited or "arguably" prohibited by section 8 of the NLRA, *i.e.*, labor disputes involving activities protected and prohibited by the NLRA. This rule preempts state jurisdiction when the activity is actually or arguably "within the compass of § 7 or § 8 of the [NLRA]." *Id.* at 246, 79 S.Ct. at 780, 3 L.Ed.2d at 784 (alteration added).

In *Garmon*, however, the Supreme Court created two exceptions to the preemption doctrine for certain classes of cases and stated:

> "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act ... [o]r where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act."

*Id.* at 243–44, 79 S.Ct. at 779, 3 L.Ed.2d at 782.[10] These exceptions provide a sense of the scope of the preemption

---

> *primary jurisdiction* in interpreting and enforcing federal labor law. Labor preemption serves to ensure that state law does not frustrate either the substantive policies established by the NLRA or the regulatory mechanisms through which those policies are implemented. '[T]he broad powers conferred by Congress upon the National Labor Relations Board to interpret and to enforce' the federal labor laws 'necessarily imply that potentially conflicting "rules of law, of remedy, and of administration" cannot be permitted to operate.' ' "[C]entralized administration of specially designed procedures [is] necessary to obtain uniform application of [the NLRA's] substantive rules and to avoid [the] diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies." ' " [Citations Omitted.] [Emphasis added.]

**10.** In *Vane v. Nocella*, 303 Md. 362, 372, 494 A.2d 181, 186 (1985), just after stating the *Garmon* exceptions, we stated:

> "In accordance with these considerations, the Supreme Court has held that the NLRA does not preempt state actions for intentional infliction of emotional distress, libel, the enforcement of laws con-

doctrine explained in *Garmon*. In *Belknap, Inc. v. Hale*, 463 U.S. 491, 498–99, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798, 807 (1983), when discussing the *Garmon* preemption doctrine and its exceptions, the Supreme Court stated that "the State's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the [NLRB's] ability to adjudicate controversies committed to it by the [NLRA], and the risk that the State will sanction conduct that the [NLRA] protects." (citations omitted) (alterations added).

The facts of the case *sub judice* reflect that the *Garmon* exceptions are inapplicable in this case. There are core issues that must be decided by the NLRB. It is clear that the interpretation of facts material to the labor issues here present is within that tribunal's initial jurisdiction under sections 7 and 8 of the NLRA.

## C. SECTIONS 7 AND 8 OF THE NLRA

The NLRB has primary jurisdiction to deal with labor disputes involving activities protected and prohibited by sections 7 and 8 of the NLRA. These particular sections of the NLRA broadly "govern both protected 'concerted activities' and [prohibited] unfair labor practices. They regulate the vital, economic instruments of the strike and the picket line, and impinge on the clash of the still unsettled claims between employers and labor unions." *Garmon*, 359 U.S. at 241, 79 S.Ct. at 777, 3 L.Ed.2d at 780 (alteration added).

Section 7 of the NLRA guarantees employees certain rights and states:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such

cerning violence, and obstruction of justice." [Internal citations omitted.]

activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a)(3)."

NLRA, § 7 (codified at 29 U.S.C. § 157).

Section 8 of the NLRA enumerates several unfair labor practices that can be committed by an employer, including the following:

"(a) Unfair labor practices by employer. It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7. . . .

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . ."

NLRA, § 8 (codified at 29 U.S.C. § 158(a)(1) and (3)).

It is clear that if Omni House improperly terminated appellants in order to interfere with their attempts to organize or if the termination, in a discriminatory fashion, was intended to discourage the attempts of the union to organize, Omni House might have committed unfair labor practices.

Furthermore, section 8(b)(1)(A) provides that it is an unfair labor practice for a labor organization "to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7" NLRA, § 8 (codified at 29 U.S.C. § 158(b)(1)). In some situations, misrepresentations by a union during an organizing campaign might constitute an unfair labor practice under section 8(b).[11]

Finally, section 8(g) provides that:

---

11. Negligent advice might also be actionable under section 8(c), which prohibits "threat of reprisal or force of promise or benefit," but protects "express[ion] of any views, argument, or opinion." In the case *sub judice*, appellants' allege that the union attempted to coerce them into recognizing the union as their collective bargaining representative by making promises of the benefits of unionizing, which according to

"A labor organization before engaging in any strike, **picketing,** or other concerted refusal to work at any **health care institution shall, not less than ten days prior** to such action, **notify the institution in writing** and the Federal Mediation and Conciliation Service of that intention, except that in the case of bargaining for an initial agreement following certification or recognition the notice required by this subsection shall not be given until the expiration of the period specified in clause (B) of the last sentence of section 8(d) of this Act." [Emphasis added.] 29 U.S.C. § 158.

## II. DISCUSSION

 This appeal stems from appellant's initial complaint filed in the Circuit Court. We hold that the negligent misrepresentation tort claim, necessarily, pursuant to the facts of the case *sub judice* as plead in the complaint, would require judicial review of issues relating to actions that are clearly or, at least "arguably," protected and/or prohibited by sections 7 and 8 of the NLRA.

 The union correctly asserts that appellant's negligent misrepresentation claim is "preempted because the conduct relied on to prove a crucial element of that claim is actually or arguably covered by the NLR[A]." In Maryland, the elements that constitute the tort of negligent misrepresentation are:

"(1) The defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

"(2) The defendant intends that his statement will be acted upon by the plaintiff;

"(3) The defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

---

appellants, might constitute an unfair labor practice by the union under the provisions of sections 8(b)(1)(A) and 8(c). If the union violated section 8(c) in this case, the NLRB is the proper tribunal to determine whether such statements on the part of the union were improper "promise of benefit" under section 8(c) or if, as the union proffers, constitute protected "expression of views" under 8(c).

"(4) The plaintiff, justifiably, takes action in reliance on the statement; and

"(5) The plaintiff suffers damages proximately caused by the defendant's negligence."

*Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337, 439 A.2d 534, 539 (1982).

Appellants contend that the facts are simple and that this is simply a tort case based upon the tortious conduct on the part of the union. Therefore, they assert, the State has jurisdiction over the dispute because the State has jurisdiction over this recognized state cause of action and a union is amenable to suit in the State court. We disagree.

To prevail appellants would have to prove that, pursuant to element one, *supra*, the union's advice that appellants had a lawful right to picket under section 7 of the NLRA was false because prior to striking they were required to give notice to Omni House pursuant to the language of section 8(g) and that the union did not advise appellants of this requirement. In this sense, it could be argued that the union was negligent in misrepresenting that appellants were "within their legal rights" regarding their union-related activities. Appellants have contended, and the record appears to reflect, that as a result of this advice, Omni House terminated their employment or, in the alternative, that their termination was a direct and proximate result of having picketed without having given the section 8(g) notice.

Thus, a crucial element of the State tort claim relies on conduct that is clearly or arguably protected or prohibited by the NLRA, because, as we see it, what appellants are essentially claiming is that the union caused them to commit a NLRA violation. The conduct which appellants are challenging, *i.e.*, the union's alleged misrepresentation, might .fall within the ambit of section 8(b) or (c) of the NLRA, because the union arguably violated these particular subsections of the NLRA. Potentially, the union, committed a prohibited unfair labor practice under section 8(b) or (c), by making such a misrepresentation during the organizing campaign.

The union, in its brief and at oral argument, has proffered that it would argue preemption in defense to appellants' State tort suit. The union explained to the Court that it would argue that appellants did have the right to picket and strike under section 7 and that the appellants did not violate section 8(g) because they did not have to give the ten day notice. As previously indicated, *supra*, it is disputed whether the employees, themselves, had to give the ten-day notice. The union argues that the plain language of the statute does not even require such a determination because it specifically states that only "labor organizations" shall give ten-days notice and, as such, Omni House could allege an 8(g) violation claim only against the union, not appellants. The union refers to the case of *NLRB v. Local Union No. 388*, 548 F.2d 704, 706–07, 710 (7th Cir.1977), and NLRB administrative decisions [12] holding that under section 8(g) a union that represents health care workers as their collective bargaining representative must give the ten-day notice, but that individual employees or groups of unorganized employees do not. Because, according to the union, appellants had not yet become official members of the union, it argues that they did not have to give notice. As a result, the union argues that Omni House violated the NLRA by terminating appellants in contravention of the NLRA and, thus, itself committed an unfair labor practice actionable only before the NLRB. The union further contends that, in reality, the actionable violation that occurred was of section 8(a)(1) and (3), an unfair labor practice on the part of Omni House when it fired the eight appellants. The union argues that proving element one of the negligent misrepresentation claim also requires determinations on the potential section 8 violations, on the part of both the union and/or Omni House. Those determinations fall within the primary jurisdiction of the NLRB.

---

**12.** *See Vencare Ancillary Services, Inc.*, 334 N.L.R.B. No. 119, 168 L.R.R.M.1029 (2001); *East Chicago Rehabilitation Center, Inc.*, 259 N.L.R.B. 996 (1982); *Walker Methodist Residence and Health Care Center, Inc.*, 227 N.L.R.B. 1630 (1977).

The determination of whether appellants were wrongfully discharged because they had the right to strike (an unfair labor practice pursuant to sections 8(a)(1) and/or (3) on the part of Omni House) or whether their discharge was proper because their strike and picketing was improper, is a matter for determination, as to which position is correct, by the NLRB, because it involves a determination as to whether the termination constituted an unfair labor practice. If the actions of Omni House were proper, then the misrepresentations of the union which resulted in the strike and picketing would have to be examined to determine if they constituted unfair labor practices. In either event, the making of such determinations is, in the first instance, a primary function of the NLRB, not the courts. To decide this tort claim would require the courts to adjudicate the merits of the underlying labor controversy which are issues that can, and should have been, presented to the NLRB for adjudication.

The union noted in its brief that:

"What is significant is that the Omni House Workers had the opportunity to bring charges against Local 37 and/or Omni House at any time after they were terminated, subject only to the limitations period prescribed by § 10 of the NLRA.... The Omni House Workers decided against bringing charges, opting instead to pursue litigation in state court. Preemption centers on claims that *could have been brought* before the NLRB even if they were not so brought." [13]

Appellants, therefore, brought a claim against the union in state court, when they should have first brought their claim

---

**13.** In fact, although not alleged in the complaint, we were advised that the union filed an unfair labor practice claim with the NLRB against Omni House after appellants were suspended. That claim, which sought injunctive relief, was withdrawn after appellants were fired. The union argues that it planned to amend and re-file the claim, but did not do so when appellants, instead of joining the union in re-filing the NLRB unfair labor practice claim against Omni House or filing their own unfair labor practice claim against Omni House, filed the negligent misrepresentation suit against the union in the Circuit Court.

before the NLRB against either or both Omni House and the
union for unfair labor practice violations of the NLRA.

## A. *GARMON* EXCEPTIONS DO NOT APPLY

Appellants' argument, as it is detailed in their brief to the
Court, is unclear in its interpretation of *Garmon* and how it
supports their position that its exceptions are applicable in the
case at bar. Nevertheless, we address the two *Garmon*
exceptions to emphasize that the Circuit Court judge was not
in error in relying on *Garmon.*

In their brief, appellants note that:

"The argument made at the motions hearing before the
Circuit Court Judge below was that because the Appellants
have sued the Union they are therefore restricted to bring-
ing their complaint before the National Labor Relations
Board which was the basis of the Motion Judge granting of
the Appellees' Motion to Dismiss on May 29, 2002. The
error of the Circuit Court judge in dismissing the case is
best answered by the Supreme Court of the United States
in *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903 [17 L.Ed.2d 842]
(1967)."

Appellants then discussed briefly the facts of the *Vaca* case,
which involved a union member who brought suit in a state
court alleging that he had been discharged in violation of a
collective bargaining agreement and charged his union with
breach of contract and duty of fair representation for failure
to take his claim to arbitration. In *Vaca,* decided subsequent
to *Garmon,* the Supreme Court held that mere union involve-
ment in a dispute does not preclude state action and that the
state courts have jurisdiction in that type of case involving a
breach of contract claim between a union member and his
union arising from a collective bargaining agreement. Due to
the nature and type of case involved, the Supreme Court
stated that "*Garmon* and like cases have no application to
§ 301 suits." [14] *Vaca,* 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17

---

14. 29 U.S.C. § 301 governs suits to enforce collective bargaining agree-
ments, where state and federal courts have concurrent jurisdiction over

L.Ed.2d 842, 854 (1967). Appellants then cite the portion of the *Vaca* case where the Supreme Court stated that it:

"has refused to hold state remedies pre-empted 'where the activity regulated was a merely peripheral concern of Labor Management Relations Act. * * * [or] touched interests so deeply rooted in local feeling and responsibility that in the absence of compelling congressional direction, we could not infer that Congress has deprived the States of the power to act.' " [15]

*Vaca*, 386 U.S. at 180, 87 S.Ct. at 911, 17 L.Ed.2d at 852. The portion of *Vaca* cited by appellants notes the *Garmon* rule and its exceptions but it does not support appellant's claim in this case. Further, appellants proffered no accompanying argument as to why *Vaca* supports the proposition that their claim is one outside of NLRB jurisdiction and within either of the *Garmon* exceptions. Appellants' reliance on *Vaca* is misplaced.

Appellants also rely upon *Batson v. Shiflett*, 86 Md.App. 340, 586 A.2d 792 (1991), *Batson v. Shiflett*, 325 Md. 684, 602 A.2d 1191 (1992), which involved a suit brought in the circuit court by a union member against the local president for, among other things, defamation and intentional infliction of emotional distress. There, the union defended, as here, on the basis that the NLRA preempted the union member from proceeding with the case in state court. Ultimately, we upheld the state tort actions against the union and, by reason of the type and character of the suit brought, held that the case did not fall within the exclusive control the NLRB. There, the *Garmon* preemption was not applicable. In *Batson*, the Court followed the approach used by the Supreme Court in

some matters that involve collective bargaining agreements and other types of contracts between unions and employers or between local union and international unions. The case *sub judice* implicates a different section of the NLRA.

15. The exception to *Garmon* involving issues peripheral to the NLRA is not implicated by the facts of this case, nor is it contended by either party that this is so. Appellants' termination of employment is clearly an activity regulated by and a concern of the NLRA.

*Garmon* and its progeny [16] by undertaking an analysis of the conduct at issue and whether the conduct for the tort claims fell under the purview of the NLRA. In *Batson,* even though the NLRB had decided an unfair labor claim arising from the underlying disputed collective bargaining agreement, the tort suits in the State court were not preempted by the NLRA because the resolution of the tort suits did not implicate and/or require adjudication of any remaining issues that should have first been presented to the NLRB.

*Batson* is also distinguishable because it involved the torts of defamation and intentional infliction of emotional distress, torts not involved in the case *sub judice.*[17] Judge Karwacki

---

**16.** For cases involving state actions that did not require the state court to interpret the NLRA or cases meeting a *Garmon* exception, *see Belknap,* 463 U.S. 491, 103 S.Ct. 3172, 77 L.Ed.2d 798 (1983) (holding that a state has an interest in protecting its citizens from fraudulent misrepresentations that involve issues peripheral to the NLRA and that for the state to decide the claims for breach of contract and fraud by the replacement workers the state court did not have to adjudicate any issues that could have been presented to the NLRB); *Linn v. United Plant Guard Workers of America, Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966) (holding that states have an overriding interest in protecting their residents from malicious libels and acknowledging that while the NLRB can redress the issuance of defamatory statements made during an election by setting aside that election, it cannot award damages, impose penalties or give other relief to the defamed individual); *but cf.,* cases stating that simply because the NLRB might lack the ability to award all of the damages allegedly claimed by a party to an action pursuant to a state tort claim, preemption may, nonetheless, be required under certain circumstances even when the claimant is left with an incomplete remedy or no remedy, *see Local 926, Int'l Union of Op. Eng. v. Jones,* 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983) (rejecting the argument that the suit should proceed in the state court because the claimant could be awarded punitive damages and attorney's fees and would be limited to back pay if his complaint had gone forward before the NLRB); *Garmon,* 359 U.S. at 247, 79 S.Ct. at 781, 3 L.Ed.2d at 784 (noting that "since remedies form an ingredient of an integrated scheme of regulation, to allow the State to grant a remedy which has been withheld from the National Labor Relations Board only accentuates the danger of conflict."); *Richardson,* 966 F.2d at 157 (noting "that state law might provide remedies unavailable under the NLRA has never been a basis for avoiding *Garmon* preemption and that claimants might retain other administrative action remedies available to them by the NLRA.").

**17.** As we indicated *supra,* the Supreme Court has held that the NLRA does not preempt state actions for certain tort actions, one being the

explained in detail for this Court the extent of federal labor preemption and how, pursuant to the facts of that case and the nature and type of the suit involved, the NLRA did not preempt the particular State tort claims there involved.

Contrary to appellants' assertions, *Batson* and the federal law relevant to this issue requires our holding in this case. Because it is necessary to determine whether unfair labor practices have occurred, the negligent misrepresentation claim is initially preempted by the NLRA and thus the subject matter jurisdiction to adjudicate that issue rests with the NLRB. The *Garmon* preemption rule is applicable in this case. The exceptions carved out by the Supreme Court to this rule are not. The issues that would be necessary to address in this case involve core rights afforded and activities prohibited by sections 7 and 8 of the NLRA. As a result, we must defer to the NLRB for adjudication of appellant's claims.

The negligent misrepresentation claim cannot be tried to conclusion unless it is determined that appellee's advice was false and that before striking, appellants individually were required to give ten days notice to Omni House pursuant to section 8(g) and that this wrong advice directly led to their termination. Such a determination, however, by our courts, would implicate a decision, as we indicated *supra,* on whether the employees had a right to strike under section 7 without giving notice because, as the union disputes, that statutory requirement pertains only to "labor organizations," not individuals, *i.e.,* the appellants in this case, and that pursuant to the facts of this case Omni House arguably committed an unfair labor practice by terminating the employees. Here, a necessary element of the tort action against the union requires a determination of whether Omni House either had or did not have the right to fire appellants. This is an NLRB matter.

---

intentional infliction of emotional distress. In *Batson,* the issues also apparently met the second *Garmon* exception and "touched interests so deeply rooted in local feeling and responsibility."

## III. CONCLUSION

We conclude that it is necessary, in order to adjudicate the state tort claim, to determine whether unfair labor practices have occurred in this case and, if so, who committed the violations. Such determinations, under the circumstances here present involve the unfair labor practices jurisdiction of the NLRB. Consequently, we hold that the trial court did not err in ruling, based upon *Garmon* and its progeny, that the NLRA preempts appellant's state cause of action.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. APPELLANTS TO PAY THE COSTS.**