*United Food & Commercial Workers International Union, et al. v. Wal-Mart Stores, Inc., et al.*, No. 42, September Term, 2016.  Opinion by Getty, J.

**LABOR & EMPLOYMENT — NATIONAL LABOR RELATIONS ACT — PREEMPTION**

Employer's state law claims for trespass and nuisance against labor union that held disruptive, nonviolent demonstrations on employer's private property were not preempted by the National Labor Relations Act ("NLRA").  Although labor union's conduct was arguably prohibited by the NLRA, local interest exception to NLRA preemption applied.  First, protecting the private property rights of citizens is a significant state interest that is deeply rooted in local feeling and responsibility.  Second, the state law claims presented to the circuit court are not identical to the claims presented to the National Labor Relations Board ("NLRB"), so exercising state court jurisdiction over the state law claims entails little risk of interference with the regulatory jurisdiction of the NLRB.  Therefore, the circuit court properly denied labor union's motion to dismiss the state law claims for lack of jurisdiction.

**LABOR & EMPLOYMENT — ANTI-INJUNCTION ACT — LABOR DISPUTE CASE**

Employer's lawsuit for trespass and nuisance against labor union did not "involve or grow out of a labor dispute," because labor union did not represent, or seek to represent, employer's employees.  Therefore, employer was not required to satisfy heightened criteria of Maryland's Anti-Injunction Act in order to receive an injunction against the labor union.

Circuit Court for Anne Arundel County
Case No. 02-C-13-181974
Argued: January 6, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 42

September Term, 2016

_____

UNITED FOOD AND COMMERCIAL
WORKERS INTERNATIONAL UNION,
ET AL.

v.

WAL-MART STORES, INC., ET AL.

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Getty, J.

_____

Filed: June 22, 2017

In this appeal, a labor union seeks dismissal of an employer's state law claims for trespass and nuisance on grounds of federal preemption. The employer, on the other hand, seeks to uphold an injunction to prohibit the labor union from holding demonstrations about the employer's employment conditions on the employer's private property. United Food and Commercial Workers International Union ("UFCW"), petitioner, is a labor union that represents grocery, retail, meatpacking, and food-processing workers. The other petitioners are a subsidiary of UFCW known as the Organization United for Respect at Walmart ("OURWalmart"), employees of UFCW, a coalition of labor organizations known as Jobs with Justice, and demonstrators identified only as "Does 1-10." Respondents— Wal-mart Stores, Inc.; WalMart Stores East, LP; and Sam's East, Inc. (collectively, "Walmart")—own and operate approximately sixty retail stores in Maryland. Between 2011 and 2013, UFCW held demonstrations at Walmart stores throughout Maryland, protesting Walmart's employment conditions. In response, Walmart sued UFCW in the Circuit Court for Anne Arundel County for trespass and nuisance, and sought an injunction against UFCW.

UFCW filed a motion to dismiss, arguing that Walmart's claims were preempted by the National Labor Relations Act ("NLRA"). The circuit court held that Walmart's claims were not preempted, and denied UFCW's motion to dismiss. Walmart filed a motion for a preliminary injunction, in which it argued that this case does not involve a labor dispute within the meaning of Maryland's Anti-Injunction Act ("AIA"). The circuit court agreed with Walmart that the AIA does not apply, and granted the preliminary injunction. After the parties filed cross-motions for summary judgment, the circuit court granted summary

judgment in favor of Walmart, and issued a permanent injunction against UFCW. On appeal, the Court of Special Appeals affirmed the judgment of the circuit court.

Before this Court, UFCW argues that the circuit court erred in denying its motion to dismiss, because Walmart's state law claims for trespass and nuisance are preempted by the NLRA. Additionally, UFCW argues that this case involves a labor dispute within the meaning of the AIA, and that Walmart did not satisfy the AIA's requirements to receive an injunction. For the reasons that follow, we hold that Walmart's claims for trespass and nuisance are not preempted by the NLRA, and therefore the circuit court properly denied UFCW's motion to dismiss. Furthermore, we hold that the circuit court was correct in ruling that this case does not involve a labor dispute within the meaning of the AIA. Accordingly, we shall affirm the judgment of the Court of Special Appeals.

## BACKGROUND

UFCW represents grocery, retail, meatpacking, and food-processing workers. Between 2011 and 2013, UFCW held demonstrations at Walmart stores in thirteen states, including Maryland.[1] Walmart employees are not unionized, and UFCW does not seek to represent them. UFCW claims that the purpose of its demonstrations was to persuade Walmart to improve employment conditions and to stop retaliating against employees who speak out for better conditions.

---

[1] UFCW's demonstrations also took place in Arkansas, California, Colorado, Florida, Georgia, Illinois, Michigan, Oklahoma, Pennsylvania, Texas, Washington, and Wisconsin.

UFCW's demonstrations in Maryland took place between July 16, 2011 and September 5, 2013, at seven Walmart stores located in Arbutus, Bowie, Germantown, Hanover, Landover Hills, Laurel, and Severn. Most demonstrations took place inside the stores; some took place in adjacent parking areas owned or leased by Walmart; and one took place on a public road near one of the stores. The demonstrations were organized as "flash mobs," meaning the demonstrators were notified by social media or cell phone text messages to quickly gather at a particular store.[2] The demonstrators then arrived at the store *en masse* in a coordinated effort. During the demonstrations, they marched through the stores—chanting, singing, blowing whistles, shouting into bullhorns and megaphones, and littering the stores with flyers. On some occasions, demonstrators inside the stores interrupted management meetings by forcing themselves into the meeting rooms and videotaping the managers' efforts to get them to leave. Some of the demonstrations lasted only fifteen to twenty minutes, while others lasted over an hour and included over one hundred demonstrators.

During many of the demonstrations, the demonstrators interfered with customers by blocking access to the cash registers and restrooms. In some cases, customers with items in their shopping carts left the store without purchasing any items. For example, during a demonstration at the Laurel Walmart on July 16, 2011, forty demonstrators wearing

---

[2] *See Wal-Mart Stores, Inc. v. United Food & Commercial Workers Int'l Union*, 382 P.3d 1249, 1252 n.2 (Colo. App. 2016) (defining "flash mob" as "[a] group of people summoned (such as by e-mail or text messages) to a designated location at a specified time to perform an indicated action before dispersing").

OURWalmart t-shirts formed a human chain stretching from the first to the last checkout counter. In some instances, the demonstrators also blocked ingress and egress to parking lots, parking spaces, and store entrances. During a demonstration in May 2012 at the Bowie Walmart, demonstrators parked a large van decorated with OURWalmart logos in the parking lot. They played OURWalmart videos on a television screen mounted on the van, piped music through speakers, and solicited customers and employees as they passed by.

At all of the demonstrations, Walmart managers repeatedly told the demonstrators to leave Walmart's property, but they refused. In each instance, the demonstrators were ultimately removed by the police, but sometimes returned to the same store as soon as the next day. Walmart's lawyers sent cease and desist letters to counsel for UFCW in October 2011, October 2012, November 2012, and April 2013. UFCW refused to cease the demonstrations absent a court order to do so.

In March 2013, Walmart filed an unfair labor practice ("ULP") charge against UFCW and OURWalmart with the National Labor Relations Board ("NLRB"). Walmart alleged that UFCW had violated section 8 of the NLRA "by planning, orchestrating, and conducting a series of unauthorized and blatantly trespassory in-store mass demonstrations . . . by which the UFCW restrained and coerced [Walmart] employees in the exercise of their Section 7 rights" under the NLRA. The ULP charge included a summary of seventy "events" UFCW had held at Walmart stores in thirteen states, including twelve "events" in Maryland. The allegations in the ULP charge all pertained to instances in which demonstrators confronted Walmart managers or employees directly, using "in your face" tactics in an effort to intimidate them into supporting UFCW. Demonstrations that did not

4

include such coercive tactics were not included in the ULP charge. In May 2013, Walmart amended its ULP charge to narrow its scope to several events at a few stores around the country. The amended ULP charge did not include any events at Walmart stores in Maryland.

On September 20, 2013, Walmart filed a complaint against UFCW in the Circuit Court for Anne Arundel County.[3] In its first amended complaint, filed on October 2, 2013, Walmart alleged that UFCW had violated Maryland law "through coordinated, statewide acts of trespass," such as conducting "in-store 'flash mobs'" and blocking "ingress and egress to parking lots, parking spaces, vehicular traffic, and store entrances." The amended complaint detailed fifteen demonstrations at seven Walmart stores in Maryland. The complaint set forth claims for trespass and public and private nuisance, and sought nominal damages, a permanent injunction, and declaratory relief.

On October 10, 2013, Walmart filed a motion for a preliminary injunction. As part of its motion, Walmart argued that this case does not involve a labor dispute within the meaning of the AIA, and therefore Walmart was not required to satisfy the AIA's heightened requirements to receive an injunction. On October 25, 2013, UFCW filed a response in opposition to the motion. UFCW responded to Walmart's argument concerning the AIA that this case does involve a labor dispute, and therefore Walmart must satisfy the heightened requirements in order to receive an injunction.

---

[3] Walmart also filed state court actions in Arkansas, Colorado, Florida, Ohio, and Washington.

5

On November 25 and 26, 2013, the circuit court held an evidentiary hearing on the motion. First, after hearing argument from both parties, the circuit court ruled that the case does not involve a labor dispute within the meaning of the AIA, so Walmart was not required to satisfy its heightened criteria for receiving an injunction. Next, Walmart presented three witnesses, each of whom was cross-examined by UFCW. At the conclusion of the hearing, the circuit court granted the preliminary injunction. In its order, entered on November 26, 2013, the circuit court enjoined UFCW from

> (i) entering on or inside Walmart private property in the State of Maryland to engage in activities such as unlawful picketing, patrolling, parading, demonstrations, "flash mobs," handbilling, solicitation, customer interference, and manager confrontations;

> (ii) entering on or inside Walmart's private property in the State of Maryland without permission or authorization from Walmart for any purpose other than shopping for and/or purchasing merchandise at Walmart's stores; [and]

> (iii) engaging in any nuisance conduct off Walmart's private property in the State of Maryland which blocks, causes to be blocked, disrupts and/or interferes with Walmart customers' or associates' access to, or ability to move around on, or enter or exit Walmart private property in the State of Maryland[.]

Meanwhile, on October 11, 2013, UFCW filed a motion to dismiss the complaint for lack of subject matter jurisdiction, arguing that Walmart's claims were preempted by the NLRA. On October 28, 2013, Walmart filed a response in opposition to the motion. On November 12, 2013, the circuit court held a hearing on the motion, and ruled that Walmart's claims were not preempted. The circuit court issued an order denying UFCW's motion to dismiss on November 26, 2013.

6

On August 19, 2014, after extensive discovery, Walmart and UFCW filed cross-motions for summary judgment. At a hearing on March 3, 2015, the circuit court denied UFCW's motion and granted Walmart's motion. On March 16, 2015, the circuit court issued a memorandum opinion and order to that effect. That same day, the circuit court entered a permanent injunction against UFCW, prohibiting it from

> 1. Entering on Walmart's private property in the State of Maryland to engage in activities such as picketing, patrolling, parading, demonstrations, chanting, "flash mobs," handbilling, solicitation, customer disruptions, manager delegations or confrontations, or associate engagement for a non-shopping purpose;
>
> 2. Entering on Walmart's private property in the State of Maryland without permission for any purpose other than shopping for and/or purchasing merchandise at Walmart's stores;
>
> 3. Interfering with, obstructing or blocking Walmart's and its customers' access to, and use of, easements and/or right-of-ways granted by Walmart across or upon apron sidewalks and parking lots adjacent to stores for which Walmart has a "building-only" lease; and
>
> 4. Engaging in any nuisance conduct off Walmart's private property which disrupts and/or interferes with Walmart's customers' or associates' access to, or ability to move around on or exit, Walmart private property in the State of Maryland[.]

The injunction defined "Walmart's private property" as the interior of its stores and other facilities in Maryland, and "[t]he apron sidewalks, parking lots, and other areas on any parcel of property in Maryland that Walmart controls as owner or lessee."

UFCW appealed to the Court of Special Appeals, which affirmed the circuit court in a reported opinion on June 1, 2016. *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.* ("*UFCW*"), 228 Md. App. 203 (2016). UFCW then petitioned this Court for a writ of certiorari on July 11, 2016, which we granted on September 2, 2016.

*United Food & Commercial Workers Int'l Union v. Wal-Mart*, 450 Md. 103 (2016).

UFCW presents two questions for our review, which we have rephrased as follows[4]:

1)      Did the circuit court err in denying UFCW's motion to dismiss for lack of

jurisdiction on grounds of federal preemption?

2)      Did the circuit court err in ruling that this case does not involve a labor dispute

within the meaning of the AIA?

## STANDARD OF REVIEW

Whether a federal statute preempts Maryland law is a question of law that this Court

reviews *de novo*. *Sweeney v. Savings First Mortg., LLC*, 388 Md. 319, 326 (2005).

Similarly, the construction of a Maryland statute, like the AIA, and the determination of

whether the statute applies to a particular case, are also questions of law that this Court

reviews *de novo*. *See Vu v. Allied Foot & Ankle, P.C.*, 180 Md. App. 663, 677–84 (2008)

(reviewing without deference the circuit court's determination that the AIA did not apply).

## DISCUSSION

### A.      *NLRA Preemption*

Congress has the power, pursuant to the Supremacy Clause[5] of the United States

Constitution, to preempt state law. *Batson v. Shiflett*, 325 Md. 684, 708 (1992) (citing

---

[4] In its petition for a writ of certiorari, UFCW combined the two issues into a single question presented: "Did the Court [of Special Appeals] err when it held that this case does not involve a labor dispute and the NLRA does not preempt Walmart's claims?" However, in their briefs, both parties addressed the question as two separate issues.

[5]      This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the

*Gibbons v. Ogden*, 22 U.S. 1 (1824)).  Federal law preempts state law when "Congress has expressly stated preemptive intent or evidenced an intent to occupy a field," or when state law conflicts with federal law.  *Law v. Int'l Union of Operating Eng'rs Local No. 37*, 373 Md. 459, 466–67 (2003).  "Because Congress has never exercised authority to occupy the entire field in the area of labor legislation, the question of whether a certain state action is preempted by federal law is one of congressional intent."  *Batson*, 325 Md. at 708 (citing *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978)).

> The enactment of the NLRA in 1935 marked a fundamental change in this Nation's labor policies.  Congress expressly recognized that collective organization of segments of the labor force into bargaining units capable of exercising economic power comparable to that possessed by employers could produce benefits for the entire economy.  Congress determined that those benefits would eventually outweigh the occasional costs of industrial strife associated with the organization of unions and the negotiation and enforcement of collective bargaining agreements.

*Vane v. Nocella*, 303 Md. 362, 366 (1985).

In addition, "[t]he NLRA established the NLRB to adjudicate labor disputes between and among employees, unions and employers."  *Law*, 373 Md. at 468.  As explained by the Supreme Court,

> Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties.  It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order.  Congress evidently considered that centralized administration of specially designed

---

judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies.

*Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776*, 346 U.S. 485, 490 (1953). "Thus, to achieve uniform as well as effective enforcement of the national labor policy, Congress vested the NLRB, not federal or state courts, with primary jurisdiction over activities subject to regulation by the Board." *Vane*, 303 Md. at 367 (citing *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 681 (1983)).

The NLRB has primary jurisdiction over activities regulated by sections 7 and 8 of the NLRA. *Law*, 373 Md. at 471. Section 7 protects certain conduct of employees, while section 8 prohibits certain conduct of employers and labor organizations by defining what constitutes an "unfair labor practice." *See* 29 U.S.C. §§ 157, 158. Pursuant to section 7, employees "have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" *Id.* at § 157. In addition, and particularly relevant here, employees "also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment . . . ." *Id.* Pursuant to section 8, it is "an unfair labor practice for a labor organization or its agents . . . to restrain or coerce . . . employees in the exercise of the rights guaranteed in section [7 of the NLRA.]" *Id.* at 158(b)(1) (paragraph break omitted). The NLRB has the authority, pursuant to the NLRA, "to prevent any person from engaging in any unfair labor practice . . . affecting commerce." *Id.* at § 160.

"In enacting the NLRA, Congress never determined the precise extent to which state law must be displaced to achieve the unifying ends sought by the national legislature." *Vane*, 303 Md. at 368. "Consequently, a major difficulty with labor law preemption analysis is that 'the aims and social policy' Congress was implementing 'were drawn with broad strokes while the details had to be filled in, to no small extent, by the judicial process.'" *Id.* (quoting *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 240 (1959)).

Accordingly, through a series of decisions, the Supreme Court established the following framework for determining whether state law causes of action are preempted by the NLRA:

> First, we determine whether the conduct that the state seeks to regulate or to make the basis of liability is actually or arguably protected or prohibited by the NLRA. . . . [I]f the conduct at issue is arguably prohibited or protected[,] otherwise applicable state law and procedures are ordinarily preempted. When, however, the conduct at issue is only a peripheral concern of the Act or touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the state of the power to act, we refuse to invalidate state regulation or sanction of the conduct. The question of whether regulation should be allowed because of the deeply-rooted nature of the local interest involves a sensitive balancing of any harm to the regulatory scheme established by Congress, either in terms of negating the [NLRB]'s exclusive jurisdiction or in terms of conflicting substantive rules, and the importance of the asserted cause of action to the state as a protection to its citizens.

*Jones*, 460 U.S. at 676 (citations omitted).

Thus, in cases of arguably protected or prohibited conduct, we begin with the presumption that the conduct is regulated by the NLRA and therefore that state law claims are preempted. However, the presumption is rebutted if either of two exceptions to

11

preemption apply. First, the NLRA does not preempt state law claims if "the conduct at issue is only a peripheral concern of the [NLRA]." *Id.* (citing *Garmon*, 359 U.S. at 243). Second, the NLRA does not preempt state law claims when the conduct at issue "touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the state of the power to act[.]" *Id.* (citing *Garmon*, 359 U.S. at 244). This is known as the "local interest exception" to the NLRA preemption analysis.

To determine whether the local interest exception applies in cases of arguably prohibited conduct,[6] the courts engage in a two-part inquiry. First, the courts must determine whether "there exist[s] a significant state interest in protecting the citizen from the challenged conduct." *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 196 (1978). Second, the courts must consider whether "the exercise of state jurisdiction over the tort claim entail[s] little risk of interference with the regulatory jurisdiction of the [NLRB]." *Id.* Regarding this second inquiry, the courts must focus on "whether the controversy presented to the state court is identical with that which could be presented to the [NLRB]." *Belknap, Inc. v. Hale*, 463 U.S. 491, 510 (1983).

---

[6] The Supreme Court has made clear that the preemption analysis for arguably protected conduct under section 7 of the NLRA is distinct from the analysis for arguably prohibited conduct under section 8 of the NLRA. *See Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 190 (1978) ("While the considerations underlying the two categories overlap, they differ in significant respects and therefore it is useful to review them separately."). UFCW has not claimed that their conduct was arguably protected by the NLRA, so that branch of the preemption analysis is not at issue here.

12

UFCW argues that the circuit court erred in denying its motion to dismiss for lack of jurisdiction. UFCW asserts that Walmart's state law claims for trespass and nuisance are preempted by the NLRA because they pertain to conduct that is arguably prohibited by the NLRA. Walmart responds that its state law claims are not preempted because the local interest exception to the NLRA preemption analysis applies to trespass and nuisance. Thus, the issue before this Court is whether the local interest exception applies to Walmart's state law claims for trespass and nuisance.[7]

In order to determine whether the local interest exception applies to Walmart's claims, we first must decide whether there is a significant state interest involved in those claims. In other words, does "there exist[] a significant state interest in protecting the citizen from the challenged conduct"? *Sears*, 436 U.S. at 196. Second, we must consider whether "the exercise of state jurisdiction over the tort claim entail[s] little risk of interference with the regulatory jurisdiction of the [NLRB]." *Id.*

Regarding the first inquiry, UFCW asserts that the local interest exception only applies to conduct involving violence, threats of violence, property damage, or malice, none of which occurred here, and therefore there is no "significant state interest" involved in Walmart's claims. Walmart responds that *Sears* held that protecting citizens from "peaceful trespass" qualifies as a significant state interest, even in the absence of violence or threats of violence. Moreover, Walmart argues that protecting private property rights is

---

[7] Walmart does not argue that the "merely peripheral concern" exception to NLRA preemption applies to their claims, so we will not address that exception in this opinion.

13

a more significant state interest than certain other state interests that have been recognized to support the local interest exception, and therefore protecting private property rights should qualify as well.

Regarding the second inquiry, UFCW asserts that courts must look to whether the conduct at issue in the state law claims is similar to the conduct at issue in the (actual or hypothetical) NLRB claim. If the conduct is similar, then the state law claims are preempted. In this case, UFCW contends, the conduct at issue in Walmart's state law trespass and nuisance claims is the same conduct that would have been at issue in the NLRB claim as originally filed, and therefore the state law claims are preempted. Walmart responds that courts must compare the legal elements of the state law claims and the (actual or hypothetical) NLRB claim, not the factual underpinnings of those claims, in order to determine whether there is a risk of interference with the regulatory jurisdiction of the NLRB. In this case, Walmart contends, the legal elements of its state law trespass and nuisance claims are distinct from the NLRB claim filed by Walmart: the former is concerned with whether UFCW trespassed on Walmart's property by exceeding its limited invitation to the public to enter its property for shopping purposes; the latter is concerned with whether UFCW engaged in coercive activities in violation of section 8 of the NLRA. Therefore, Walmart concludes, its state law claims for trespass and coercion are not preempted by the NLRA.

Both parties recognize that *Sears* is the leading Supreme Court decision regarding the local interest exception to NLRA preemption, and both parties assert that *Sears* is controlling here. However, the parties differ on their respective interpretations of the *Sears*

14

decision.  In *Sears*, a carpenters union picketed on Sears' exterior private property.  436 U.S. at 182.  "The picketing was peaceful and orderly."  *Id.*  When Sears attempted to remove the pickets from its property through the use of its private security, the union refused to leave.  *Id.* at 182–83.  Thereafter, Sears filed a complaint in state court "seeking an injunction against the continuing trespass."  *Id.* at 183.

> Sears asserted no claim that the picketing itself violated any state or federal law.  It sought simply to remove the pickets from its property to the public walkways, and the injunction issued by the state court was strictly confined to the relief sought.  Thus, as a matter of state law, the location of the picketing was illegal but the picketing itself was unobjectionable.

*Id.* at 185.  The union argued that Sears' state law claim was preempted because the peaceful picketing was both arguably protected and arguably prohibited by the NLRA.  *Id.*

The Supreme Court began its analysis by quoting the general rule of NLRA preemption: "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted."  *Id.* at 187–88 (quoting *Garmon*, 359 U.S. at 245).  The *Sears* Court then qualified that general rule with the following observation:

> While the *Garmon* formulation accurately reflects the basic federal concern with potential state interference with national labor policy, the history of the labor pre-emption doctrine in this Court does not support an approach which sweeps away state-court jurisdiction over conduct traditionally subject to state regulation without careful consideration of the relative impact of such a jurisdictional bar on the various interests affected.

*Id.* at 188.

The Court then turned to the "arguably prohibited" prong of the preemption analysis, and began by discussing prior cases in which the contested state law claims were held to be preempted by the NLRA. *See id.* at 191–94 (citing, *inter alia*, *Garner*, 346 U.S. 485). Next, the *Sears* Court contrasted those cases with others in which it had held that the local interest exception applied, and therefore the state law claims at issue were not preempted. *See id.* at 194–97. The Court summarized these "local interest" cases as follows:

> Thus, for example, the Court has upheld state-court jurisdiction over conduct that touches "interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." [] *Garmon*, 359 U.S. at 244. *See Construction Workers v. Laburnum Construction Corp.*, 347 U.S. 656 [(1954)] (threats of violence); *Youngdahl v. Rainfair, Inc.*, 355 U.S. 131 [(1957)] (violence); *Automobile Workers v. Russell*, 356 U.S. 634 [(1958)] (violence); *Linn v. Plant Guard Workers*, 383 U.S. 53 [(1966)] (libel); *Farmer v. Carpenters*, 430 U.S. 290 [(1977)] (intentional infliction of mental distress).

*Id.* at 195.

Next, citing *Farmer*, the *Sears* Court identified two factors that "warranted a departure from the general pre-emption guidelines in the 'local interest' cases." *Id.* at 196.

> First, there existed a significant state interest in protecting the citizen from the challenged conduct. Second, although the challenged conduct occurred in the course of a labor dispute and an unfair labor practice charge could have been filed, the exercise of state jurisdiction over the tort claim entailed little risk of interference with the regulatory jurisdiction of the [NLRB]. Although the arguable federal violation and the state tort arose in the same factual setting, the respective controversies presented to the state and federal forums would not have been the same.
>
> The critical inquiry, therefore, is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to (as in

16

*Garner*) or different from (as in *Farmer*) that which could have been, but was not, presented to the [NLRB]. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the [NLRB] which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.

*Id.* at 196–97 (footnote omitted).

Finally, the *Sears* Court applied these two factors to Sears' state law claim and determined that "the controversy which Sears might have presented to the [NLRB] is not the same as the controversy presented to the state court." *Id.* at 198.

If Sears had filed a charge, the federal issue would have been whether the picketing had a recognitional or work-reassignment objective; decision of that issue would have entailed relatively complex factual and legal determinations completely unrelated to the simple question whether a trespass had occurred. Conversely, in the state action, Sears only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim. Accordingly, permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the [NLRB]'s primary jurisdiction to enforce the statutory prohibition against unfair labor practices.

*Id.* (footnote omitted). Therefore, the Supreme Court concluded that preemption was inappropriate in this situation, because normal preemption considerations were "insufficient to preclude a State from exercising jurisdiction limited to the trespassory aspects of [the union's] activity." *Id.*[8]

UFCW insists that *Sears* did not apply the local interest exception to the union's picketing, but simply held that Sears' state law claim for trespass was not preempted

---

[8] The Supreme Court then went on to consider whether Sears' state law claim was preempted under the "arguably protected" prong of the NLRA preemption analysis, and ultimately concluded that it was not. *Sears*, 436 U.S. at 199–207.

because it involved conduct that was distinct from the "arguably prohibited" conduct under the NLRA. In addition, UFCW notes that in its summary of local interest cases, the *Sears* Court specifically enumerated four state interests that qualified for the exception—violence, threats of violence, libel, and intentional infliction of emotional distress—but did not mention trespass. Based on this observation, UFCW concludes that trespass is not a significant state interest to which the local interest exception applies.

Walmart responds that the *Sears* decision did apply the local interest exception to the union's picketing, and establishes that preventing peaceful trespass is a significant state interest worthy of the exception. Walmart notes that the *Sears* Court did not mention trespass in its list of examples of *prior* local interest cases, because that case was the first time the Supreme Court had held that peaceful trespass qualifies for the exception. Walmart also contends that in holding that Sears' trespass claim entailed little risk of interference with the NLRB, the Supreme Court compared the respective *legal elements* of the state law claim versus the NLRB claim, rather than the underlying *conduct*.

We agree with Walmart's interpretation of the *Sears* decision. UFCW is simply incorrect when it states that *Sears* did not apply the local interest exception in its "arguably prohibited" preemption analysis. The *Sears* Court made clear that it was applying this exception by summarizing its prior case law regarding the exception, 436 U.S. at 194–95, identifying the two-part test for analyzing the exception, *id.* at 196–97, and then evaluating the facts of the case before it in the context of that two-part inquiry. *Id.* at 198. Although the Court did not explicitly state that peaceful trespass supports the local interest exception to NLRA preemption, this was clearly the holding of the case. Indeed, the Supreme Court

18

confirmed this holding when it cited *Sears* in a later case discussing the local interest

exception:

> This presumption of federal pre-emption, based on the primary jurisdiction rationale, properly admits to exception when unusually "deeply rooted" local interests are at stake. In such cases, appropriate consideration for the vitality of our federal system and for a rational allocation of functions belies any easy inference that Congress intended to deprive the States of their ability to retain jurisdiction over such matters. We have, therefore, refrained from finding that the NLRA pre-empts state court jurisdiction over state breach of contract actions by strike replacements, *Belknap, Inc. v. Hale*, 463 U.S. 491 (1983), **state trespass actions, *Sears, Roebuck & Co. v. [San Diego Cnty. Dist. Council of] Carpenters*, 436 U.S. 180 (1978)**, or state tort remedies for intentional infliction of emotional distress, *Farmer v. Carpenters*, 430 U.S. 290 (1977).

*Brown v. Hotel & Rest. Emps. & Bartenders Int'l Union Local 54*, 468 U.S. 491, 502–03

(1984) (emphasis added).

Therefore, we reject UFCW's contention that the local interest exception is strictly

limited to cases involving violence, threats of violence, or malicious conduct. The

Supreme Court held in *Sears* (and later confirmed in *Brown*) that preventing peaceful

trespass also qualifies as a significant state interest that is deserving of the local interest

exception. Furthermore, we agree with Walmart that the state interest in protecting private

property rights is at least as significant as other previously recognized interests falling

under the exception (such as protection against libel and intentional infliction of emotional

distress), and therefore it would be irrational to conclude that this state interest is not

"significant" enough to qualify for the exception unless it is accompanied by violence,

threats of violence, or property damage. *See Taggart v. Weinacker's Inc.*, 397 U.S. 223,

227–28, (1970) (Burger, C.J., concurring) ("The protection of private property, whether a

19

home, factory, or store, through trespass laws is historically a concern of state law. . . . Few concepts are more 'deeply rooted' than the power of a State to protect the rights of its citizens."). Accordingly, we hold that there is a significant state interest involved in Walmart's state law claims for trespass and nuisance—namely, the interest in protecting private property rights.

Turning to the second inquiry under the local interest exception, we agree with Walmart's contention that courts must look to the legal controversies that would be presented to each tribunal (i.e., the state court and the NLRB), not the conduct underlying those controversies, to determine whether exercising state court jurisdiction would entail little risk of interference with the regulatory jurisdiction of the NLRB. As the Supreme Court stated in *Sears*,

> The critical inquiry, therefore, is . . . whether the **controversy** presented to the state court is identical to (as in *Garner*) or different from (as in *Farmer*) that which could have been, but was not, presented to the [NLRB]. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the [NLRB] which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid.

436 U.S. at 197 (emphasis added). Thus, the *Sears* Court explicitly referenced controversies, not conduct, when discussing the second inquiry under the local interest exception.

Moreover, when the *Sears* Court applied this formulation to the case before it, its analysis concerned *controversies*, or legal issues, not *conduct*:

> In the present case, the **controversy** which Sears might have presented to the [NLRB] is not the same as the **controversy** presented to the state court. If Sears had filed a charge, the federal **issue** would have been whether the

20

picketing had a recognitional or work-reassignment objective; decision of that **issue** would have entailed relatively complex factual and legal determinations completely unrelated to the simple question whether a trespass had occurred. Conversely, in the state action, Sears only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim. Accordingly, permitting the state court to adjudicate Sears' trespass claim would create no realistic risk of interference with the [NLRB]'s primary jurisdiction to enforce the statutory prohibition against unfair labor practices.

*Id.* at 198 (emphases added) (footnote omitted).

Later, in *Belknap*, the Supreme Court once again utilized the comparison-of-controversies analysis to determine that the contested state law claims were not preempted by the NLRA. In *Belknap*, employees went on strike when contract negotiations between their collective bargaining representative and the employer broke down. 463 U.S. at 494. After the strike began, the employer granted a wage increase to union employees who stayed on the job. *Id.* The employer then hired replacement workers to take the place of the employees who went on strike, and made repeated representations to the replacement workers that their employment would continue even if the striking employees returned to work. *Id.* at 494–95. Meanwhile, the striking employees filed a complaint against the employer with the NLRB, contesting the unilateral wage increase. *Id.* at 495. Following additional negotiations between the employer and the union, the striking employees returned to work pursuant to a settlement agreement resolving the NLRB complaint. *Id.* at 496. In order to make room for the return of the striking employees, the employer laid off the replacement workers to whom it had made representations of continued employment. *Id.* The replacement workers sued the employer in state court for misrepresentation and

21

breach of contract. *Id.* The employer argued that the state law claims were preempted by the NLRA. *Id.* at 497.

To determine whether the local interest exception applied, the Supreme Court utilized the *Sears* analysis to compare the state law and NLRB claims. The Court noted that "[t]he focus of [the NLRB's] determinations . . . would be on whether the rights of strikers were being infringed." *Id.* at 510. However, "[n]either controversy [presented to the NLRB] would have anything in common with the question whether [the employer] made misrepresentations to replacements that were actionable under state law. The [NLRB] would be concerned with the impact on strikers[,] not with whether the employer deceived replacements." *Id.*

In addition, the Court noted the difference in remedies available pursuant to state law and the NLRA: "the injury remedied by the state law has no relevance to the [NLRB]'s function and . . . the [NLRB] can award no damages, impose no penalty, or give any other relief to the plaintiffs in this case." *Id.* at 511 (brackets and internal quotation marks omitted) (quoting *Linn*, 385 U.S. at 63); *see also id.* at 510 ("The strikers cannot secure reinstatement, or indeed any relief, by suing for misrepresentation in state court. The state courts in no way offer them an alternative forum for obtaining relief that the [NLRB] can provide."). Therefore, the Court concluded that "[t]he state interests involved in this case clearly outweigh any possible interference with the [NLRB]'s function that may result from permitting the action for misrepresentation to proceed." *Id.* at 511.

And, if *Sears* and *Belknap* left any doubt as to whether courts should compare legal controversies instead of the underlying facts of the respective claims, this Court squarely

22

addressed that issue when it applied the Supreme Court's analysis to a union's preemption

argument regarding claims for defamation and intentional infliction of emotional distress:

> Thus, where the conduct at issue in the state litigation is said to be arguably prohibited by the NLRA and hence within the exclusive jurisdiction of the NLRB, as contended here, the critical inquiry in applying the *Garmon* rules is "whether the controversy presented to the state court is identical with that which could be presented to the [NLRB]," **not whether there is a similarity of facts to be presented before the NLRB and the state court, or whether the same events and conduct gave rise to both an unfair labor practice claim and a state tort claim**.

*Batson*, 325 Md. at 714 (emphasis added) (citation omitted).

Therefore, we conclude that, in assessing whether the exercise of state court

jurisdiction would entail little risk of interference with the regulatory jurisdiction of the

NLRB, this Court must compare the respective controversies, not the underlying conduct

giving rise to those controversies. As exemplified by *Sears*, *Belknap*, and *Batson*, an

examination of the respective controversies focuses on the legal elements of the claims, the

issues that would be presented to each tribunal, and the remedies that each tribunal is

authorized to award to the parties.

In this case, the controversies presented to the circuit court—trespass and

nuisance—are not identical to the controversy presented to the NLRB. Although the

controversies are based on the same conduct (namely, UFCW's demonstrations at various

Walmart stores), the legal elements, issues, and potential remedies of the state law claims

are notably distinct from those of the NLRB claim. For example, the primary issue in the

state law trespass claim is whether UFCW exceeded the scope of Walmart's limited

invitation to the public to enter its private property for shopping purposes. Similarly, the

primary issue in the nuisance claim is whether UFCW invaded Walmart's interest in the use and enjoyment of its land. In contrast, the primary issue in the NLRB claim is whether UFCW's demonstrations restrained or coerced Walmart employees into supporting the union, in violation of section 8 of the NLRA.

Resolution of the state law claims is not dependent upon whether UFCW violated the NLRA. Even if UFCW's demonstrations did not restrain or coerce Walmart employees into supporting the union, UFCW would still be liable for trespass and nuisance as long as it exceeded the scope of Walmart's limited invitation to the public to enter its property for shopping purposes (trespass), and interfered with Walmart's use and enjoyment of its land (nuisance). For example, UFCW could be liable for trespass and nuisance if it had entered Walmart's property for the purpose of soliciting customers and employees to buy a product or service without Walmart's permission, even if the solicitation was completely unrelated to union activity. Thus, the fact that UFCW may have also violated section 8 of the NLRA when it entered Walmart's property is immaterial to whether it committed trespass and nuisance.

Furthermore, the potential remedy available to Walmart regarding UFCW's conduct in state court is distinct from the potential remedy available from the NLRB. The state court could (and did) prohibit UFCW from entering Walmart's property for any non-shopping purpose without Walmart's permission. The NLRB, by contrast, could prohibit UFCW from coercing Walmart employees to support the union *anywhere*. For example, if UFCW knew that Walmart employees at a particular store regularly ate lunch at a neighboring restaurant, not on Walmart's property, and UFCW decided to conduct their

demonstrations targeting Walmart employees at the restaurant rather than at the store, Walmart would still be able to file a ULP charge with NLRB against UFCW, but Walmart would have no state law cause of action for trespass or nuisance, because the demonstrations did not take place on or interfere with Walmart's private property. In other words, the relief awarded by the state court is premised upon the *location* of the objectionable conduct, not its *purpose*; the relief awarded by the NLRB is premised upon the *purpose* of the objectionable conduct, not its *location*. Simply put, while there is some overlap in the type of conduct that would be covered by the two remedies, including some of UFCW's conduct in this case, the remedies are not the same.

Finally, in considering whether the exercise of state court jurisdiction would entail little risk of interference with the jurisdiction of the NLRB, we agree with the policy concern raised by the Court of Special Appeals below:

> [I]n cases such as this, where a labor organization that does not represent the employees enters on the employer's private property to demonstrate about its labor practices, without any arguably protected right to do so under the NLRA, it would make little sense if, by also engaging in conduct arguably prohibited by the NLRA, it could deprive the employer of the state law claims it otherwise could bring to remedy the conduct. In other words, **a labor union cannot fairly say that because it violated the NLRA, it is no longer subject to state trespass and nuisance laws**.

*UFCW*, 228 Md. App. at 229 (emphasis added).

Therefore, we conclude that, regarding the second inquiry of the local interest exception analysis, the exercise of state court jurisdiction over Walmart's claims for trespass and nuisance against UFCW would entail little risk of interference with the regulatory jurisdiction of the NLRB. Having already concluded, regarding the first inquiry

of the analysis, that protecting private property rights is a significant state interest that qualifies for the exception, we hold that Walmart's state law claims satisfy both prongs of the analysis, and therefore the local interest exception applies. Thus, we hold that Walmart's state law claims for trespass and nuisance are not preempted by the NLRA, and the circuit court properly denied UFCW's motion to dismiss for lack of jurisdiction.

## B. The Anti-Injunction Act

Maryland's Anti-Injunction Act, enacted in 1935, "place[s] restrictions on the power of equity courts to grant injunctions in labor disputes." *Dist. 1199E, Nat'l Union of Hosp. & Health Care Emps. v. Johns Hopkins Hosp.*, 293 Md. 343, 345 (1982). The AIA "requires detailed notice, hearing and specified fact-finding procedures before any injunction may issue." *Id.* at 346. Specifically, the AIA provides that

> a court may not issue a temporary or permanent injunction in a case that involves or grows out of a labor dispute unless . . . the court finds that:
>
> (i) an unlawful act:
>
>> 1. has been threatened and, unless restrained, will be committed; or
>>
>> 2. has been committed and, unless restrained, will be continued;
>
> (ii) unless it grants the relief requested, the property of the plaintiff will be injured substantially and irreparably;
>
> (iii) greater injury will be inflicted on the plaintiff for each item of relief that the court denies than will be inflicted on the defendant if the court grants the item;
>
> (iv) it is not granting any item of relief for which a court lacks jurisdiction under § 4-307 of this subtitle;
>
> (v) the plaintiff has no adequate remedy at law; and

26

(vi) each public officer who has a duty to protect the property of the plaintiff has failed or is unable to give adequate protection.

Md. Code (1991, 2008 Repl. Vol.), Labor & Employment Article ("LE") § 4-314(3).

The AIA defines a "labor dispute" to

include[] any controversy, regardless of whether the disputants stand in the proximate relation of employee or employer, concerning:

(1) terms or conditions of employment;

(2) employment relations;

(3) the association or representation of persons in negotiating, setting, maintaining, or changing terms or conditions of employment; or

(4) any other controversy arising out of the respective interests of employee or employer.

LE § 4-301(c). Furthermore, the AIA provides that

[a] case shall be held to involve or grow out of a labor dispute when the case involves:

(1) persons who are engaged in a single industry, trade, craft, or occupation, employees of the same employer, or members of the same or an affiliated organization of employees or employers, regardless of whether the dispute is between:

(i) 1 or more employees or associations of employees and 1 or more employers or associations of employers;

(ii) 1 or more employees or associations of employees and 1 or more employees or associations of employees; or

(iii) 1 or more employers or associations of employers and 1 or more employers or associations of employers; or

(2) a conflicting or competing interest in a labor dispute of a person participating or interested in the labor dispute.

LE § 4-310.

27

UFCW argues that the circuit court erred in ruling that this case does not involve a labor dispute within the meaning of the AIA, and Walmart should have been required to establish the heightened requirements for receiving an injunction under the AIA. Walmart responds that the circuit court correctly ruled that this case does not "involve or grow out of a labor dispute," and therefore Walmart was not required to satisfy the heightened requirements of the AIA in order to receive an injunction against UFCW. Furthermore, Walmart asserts that, even if the AIA did apply, Walmart submitted sufficient evidence to the circuit court to satisfy the heightened criteria for receiving an injunction under the AIA. The latter argument, however, is not properly before this Court, and therefore we shall address only the former.[9]

---

[9] Walmart also argues that UFCW waived any claim of error with respect to whether the AIA applies because, in its petition for a writ of certiorari, UFCW did not contest the Court of Special Appeals' alternative holding that, if the AIA did apply, Walmart nonetheless satisfied its heightened requirements for receiving an injunction. After holding that the AIA did not apply to this case, the Court of Special Appeals went on to hold that, "[e]ven if this case *did* involve a labor dispute, we nevertheless would affirm the circuit court's ruling that the Anti-Injunction Act criteria were met." *UFCW*, 228 Md. App. at 237. Based on our review of the record, we do not believe the circuit court ever made such a ruling.

At the beginning of the hearing on November 25, 2013, the circuit court ruled that this case did not involve a labor dispute within the meaning of the AIA. At the conclusion of that hearing, on a motion for reconsideration, the circuit court again ruled that this case did not involve a labor dispute. The circuit court never considered whether Walmart had satisfied the six criteria for receiving an injunction in a labor dispute case under the AIA, and never made any factual findings with respect to those criteria. Instead, after ruling that the case did not involve a labor dispute, the circuit court applied the four factors that a court must consider before granting a preliminary injunction *in any case*, citing *Fogle v. H & G Restaurant, Inc.*, 337 Md. 441, 455–56 (1995). Based on its consideration of those four factors, the circuit court granted the preliminary injunction.

Because the circuit court did not make factual findings as to whether Walmart satisfied the AIA's requirements, that question is not properly before us. *See* Md. Rule 8-131(a)

28

The AIA expressly states that it "shall be interpreted and applied in accordance with the policy stated in § 4-302[.]"  LE § 4-303.  That policy provides as follows:

> (1) negotiation of terms and conditions of employment should result from voluntary agreement between employees and employer; and
>
> (2) therefore, each individual worker must be:
>
>> (i) fully free to associate, organize, and designate a representative, as the worker chooses, for negotiation of terms and conditions of employment; and
>>
>> (ii) free from coercion, interference, or restraint by an employer or an agent of an employer in:
>>
>>> 1. designation of a representative;
>>>
>>> 2. self-organization; and
>>>
>>> 3. other concerted activity for the purpose of collective bargaining or other mutual aid or protection.

LE § 4-302.  Furthermore, "because the [AIA] is in derogation of the law and deprives a court of jurisdiction, it must be strictly construed."  *Vu*, 180 Md. App. at 683 (citing *Dist. 1199E*, 293 Md. at 359–60).

With these considerations in mind, we hold that this case does not "involve or grow out of a labor dispute" within the meaning of the AIA.  This case does not satisfy either of the two definitions of a "labor dispute case" provided in LE § 4-310.  Although UFCW could qualify as "persons who are engaged in a single industry, trade, craft, or occupation"

---

("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court[.]").  However, the circuit court's ruling that this case does not involve a labor dispute within the meaning of the AIA, which was raised in UFCW's petition for a writ of certiorari, is properly before this Court, and we conclude that the issue has not been waived.

29

under LE § 4-310(1), UFCW was not acting in this capacity during its demonstrations at various Walmart stores. UFCW does not represent Walmart employees, and does not seek to represent them. Instead, the stated purpose of UFCW's demonstrations was to bring awareness to Walmart's unsatisfactory employment conditions. In this way, UFCW could more properly be characterized as activists, not representatives. And, because this case does not involve the negotiation of employment conditions, or demonstrations by Walmart employees *themselves*, none of the policy goals stated in LE § 4-302 are applicable here.

We recognize, as did the Court of Special Appeals, that the ultimate goal of UFCW's demonstrations was to improve the terms or conditions of employment for Walmart employees, and thus one could argue that this case involves a labor dispute as defined by LE § 4-301(c)(1). But, because the demonstrations were not conducted by Walmart employees, or a union representing Walmart employees, or a union seeking to represent employees, in order to improve the terms and conditions of their employment, we do not believe that this case can properly be considered a labor dispute under the AIA.

In reaching this conclusion, we consider not only the stated policy of the AIA, but also the historical context in which it was enacted:

> Historically, employers had sought and obtained the remedy of injunction to thwart workers in organized labor activities, most notably strikes and picketing, that gave them leverage and bargaining power. The anti-injunction statutes of the 1930's and 1940's, including the Maryland Act, were designed to limit and, in some circumstances, circumscribe entirely the remedy of injunction as it was being used by employers to suppress labor organization.

*Vu*, 180 Md. App. at 682. Here, Walmart did not seek an injunction against UFCW "to thwart workers in organized labor activities . . . that gave them leverage and bargaining

30

power." *Id.* Instead, Walmart sought an injunction against UFCW in order to restore peace and order to its stores, and to prevent further disruptions to its business. Thus, the injunction against UFCW not only benefits Walmart, but Walmart's employees as well, by protecting them from the disruptive behavior of UFCW's demonstrators.

Therefore, we hold that the circuit court was correct in ruling that this case does not involve a labor dispute within the meaning of the AIA, and thus Walmart was not required to satisfy the AIA's heightened requirements in order to receive an injunction against UFCW.

## CONCLUSION

We hold that the local interest exception to NLRA preemption applies to Walmart's state law claims for trespass and nuisance against UFCW, and therefore those claims are not preempted by the NLRA. Accordingly, the circuit court did not err in denying UFCW's motion to dismiss Walmart's claims for lack of jurisdiction. Additionally, we hold that this case does not involve a labor dispute within the meaning of the AIA, and therefore Walmart was not required to satisfy the heightened requirements of the AIA in order to receive an injunction against UFCW. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**